Filed 8/25/25  P. v. Diaz CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>FERNANDO DIAZ,<br><br>     Defendant and Appellant. | B336397<br><br>(Los Angeles County<br>Super. Ct. No. SA105654) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher W. Dybwad, Judge.  Affirmed.

S.R. Balash, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

After a jury found defendant Fernando Diaz guilty of false imprisonment, the trial court ordered that he register as a sex offender pursuant to Penal Code[1] section 290.006.  On appeal, defendant contends the trial court erred by requiring such registration.  We affirm.

# II.  BACKGROUND

A.  *Procedural Summary*

On May 3, 2022, the Los Angeles County District Attorney charged defendant by information with one count of kidnapping. (§ 207, subd. (a).)

On September 26, 2023, a jury acquitted defendant of kidnapping, but convicted him of the lesser-included offense of false imprisonment.  (§ 236.)

On December 8, 2023, the trial court sentenced defendant to 364 days in county jail.  The court also exercised its discretion to order that defendant register as a sex offender pursuant to section 290.006.

---

[1]  Further statutory references are to the Penal Code unless otherwise indicated.

B.    *Trial*

1.    Prosecution Case

On July 22, 2021, Jennifer L. (Jennifer) and a friend went to a bar in West Hollywood, where the two drank alcoholic drinks over a period of four hours.  At approximately midnight, the friend told Jennifer that he had to go home and Jennifer responded that she wished to stay out.  The friend and Jennifer then went their separate ways.

On July 23, 2021, at approximately 2:00 a.m., Los Angeles County Sheriff's Deputy Kevin Herrera was on patrol in West Hollywood when he saw a white van and a red car parked on the street.  The driver of the red car waved at Herrera to get his attention.  Herrera stopped his patrol car and the driver of the red car pulled up to the passenger side of Herrera's patrol vehicle.  The driver reported, "'I just saw this guy carry a girl into that white van, and she appears to be really drunk.  And I think she needs help.'"  While the driver of the red car spoke with Herrera, defendant, who was the driver of the white van, began driving away.  Deputy Herrera then made a U-turn and followed behind defendant.

Defendant stopped his vehicle and pulled over.  Herrera activated his lights.  Defendant then got out of the van and started to walk away.  Deputy Herrera got out of his vehicle and asked defendant, "'Hey, what are you doing?'"  Defendant appeared to be "nervous," and "dismissive and sweating."  Herrera noticed that all but the two front windows and windshield of defendant's van were covered by curtains.  Herrera asked defendant to open his van.  Defendant complied, and

3

Herrera saw Jennifer "slouched" over in a seat in the rear compartment. She was not restrained by a seat belt and the top button of her shorts was undone. Herrera tapped Jennifer's shoulder and repeatedly directed her to wake up. After about 10 seconds, Jennifer awoke. She appeared "very confused" and Herrera had to repeat his questions to her multiple times.

Los Angeles County Sheriff's Deputy Jose Flores arrived on the scene and began to assist Herrera. He searched defendant and found "an unopened box of condoms in his front left pants pocket." According to Flores, defendant appeared "fidgety" and "struggl[ed] to make eye contact." The deputies arrested defendant.

Jennifer recalled being with her friend at a bar in West Hollywood on the night of the incident. Her next memory was of a sheriff's deputy opening the back door of a patrol vehicle so that she could get into the vehicle. When she "came to," Jennifer realized that she had urinated on herself. Jennifer did not know defendant and did not recall seeing him on the night of the incident.

A Los Angeles County Sheriff's detective reviewed data, including text and audio messages from social media apps, taken from defendant's cell phone, dated from July 19, 2021, to July 23, 2021. The messages indicated that defendant had quarreled and broken up with his girlfriend prior to the incident. And, on the date of the incident, defendant used a dating app to send and receive messages that were "sexual in nature."

2.    <u>Defense Case</u>

Two of defendant's friends testified that defendant was a helpful and nonviolent person. They had never seen defendant drunk. Defendant's coworker testified that defendant was employed as a nonemergency medical transport driver. The coworker was scheduled to meet defendant in West Hollywood on the date of the incident. The coworker was not feeling well and did not attend the scheduled meeting.

C.    *Sex Offender Registration*

Prior to the sentencing hearing, the parties submitted briefs on the issue of whether defendant should be required to register as a sex offender. The prosecution argued that registration should be imposed. Defendant disagreed and cited in support a report from psychologist Lydia Bangston. Bangston opined that, based on defendant's statements, "[t]here is no indication of sexually deviant preoccupations and no history of deviant sexual behaviors" and "[h]e does not exhibit signs of hypersexual behaviors or poor emotional self-regulation that would be dynamic factors increasing risk of inappropriate sexual behaviors."

At sentencing, the trial court, having considered the briefs and the parties' arguments, ordered defendant to register as a sex offender pursuant to section 290.006. The court found that defendant committed his crime because of sexual compulsion or for the purpose of sexual gratification. It cited to the following evidence in support: defendant's cell phone messages seeking a sexual encounter on the night of the incident; Jennifer's

intoxication and location in the back of defendant's van; Jennifer not knowing who defendant was; one of the buttons on Jennifer's shorts being undone; defendant driving away in the vehicle when the deputy arrived and walking away from the van when the deputy stopped his vehicle; and the jury's finding that Jennifer was confined in the van against her will. Defendant timely appealed.

## III. DISCUSSION

Section 290.006, subdivision (a) provides: "Any person ordered by any court to register pursuant to the act, who is not required to register pursuant to Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration." Unless the court makes additional findings, "[t]he person shall register as a tier one offender . . . ." (*Id.*, subd. (b); see § 290, subd. (d)(1) ["A tier one offender is subject to registration for a minimum of 10 years"].) The imposition of sex offender registration pursuant to section 290.006 is reviewed for abuse of discretion. (See *People v. Picklesimer* (2010) 48 Cal.4th 330, 340.) "'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.] A trial court abuses its discretion when its factual findings are not

6

supported by the evidence, or its decision is based on an incorrect legal standard. [Citation.]" (*People v. Thai* (2023) 90 Cal.App.5th 427, 433; see *People v. Mary H.* (2016) 5 Cal.App.5th 246, 256, citing Evid. Code, § 115 ["'Except as otherwise provided by law, the burden of proof [at trial] requires proof by a preponderance of the evidence'"].)

Defendant contends the evidence was insufficient to support a finding that he committed false imprisonment because of a sexual compulsion or for purposes of sexual gratification. We disagree. Data retrieved from defendant's cell phone indicated that on the day of the incident he was using an app to send and receive sexual messages. Defendant had condoms on his person and the deputies found Jennifer slumped over in a seat, unrestrained. Jennifer's posture supported a finding that defendant was not in the process of transporting Jennifer as a passenger in a van but was instead preparing to engage in sexual conduct with her. Indeed, defendant walked away from the van when the sheriff's deputy activated the lights of his car, which evidenced a consciousness of guilt and demonstrated that defendant was not engaged in the act of transportation. The top button of Jennifer's shorts was undone. Because Jennifer was unconscious and had difficulty waking up, the court could have reasonably concluded that defendant, and not Jennifer, had undone her shorts. The court could have further reasonably inferred that defendant undid Jennifer's shorts in order to engage in sexual conduct with her. The trial evidence therefore supported a finding, by a preponderance of the evidence, that when defendant falsely imprisoned Jennifer, he did so with the purpose of sexual gratification.

Defendant also argues that the imposition of sex offender registration was precluded by the jury's acquittal of defendant as to the kidnapping count.  The crime of kidnapping includes as an element that defendant moved the victim with an illegal intent or for an illegal purpose.  (CALCRIM No. 1201; see *People v. Lewis* (2023) 14 Cal.5th 876, 896.)  The crime of false imprisonment does not have an "illegal intent or illegal purpose" element.  (See § 236; CALCRIM No. 1242.)  Defendant reasons that because he was acquitted of kidnapping and convicted of false imprisonment, the jury impliedly found that he moved Jennifer without an illegal intent or illegal purpose, and therefore sex offender registration was improper.  We disagree.  The trial court was not bound by the jury's verdict in determining the facts related to sex offender registration.  (See *People v. Picklesimer, supra*, 48 Cal.4th at pp. 343–344 [because sex offender registration is not punishment, jury findings were not required to support registration order].)

Moreover, in evaluating whether to impose sex offender registration under section 290.006, subdivision (a), a court does not examine whether a defendant has an "illegal intent or illegal purpose," but instead examines whether the defendant committed the offense for purposes of sexual gratification.  Thus, the fact that the jury acquitted defendant of kidnapping is not inconsistent with a finding that defendant committed false imprisonment for the purpose of sexual gratification, and does not preclude the trial court from exercising its discretion to impose sex offender registration.  (See, e.g., *People v. Mosley* (2015) 60 Cal.4th 1044, 1049–1050 [affirming trial court's imposition of sex offender registration under § 290.006 even though jury acquitted defendant of committing lewd act on child under 14 and convicted him of simple assault].)

Defendant also contends the trial court, in violation of the Fifth Amendment to the United States Constitution, considered defendant's failure to testify when it found that defendant acted for the purpose of sexual gratification. "Under the rule in *Griffin v. California* [(1965)] 380 U.S. [609, 612–613 (*Griffin*)], it is a violation of the Fifth Amendment to the United States Constitution for the prosecutor or court to comment on the defendant's failure to testify. The *Griffin* rule has been extended to prohibit a prosecutor from commenting, either directly or indirectly, on the defendant's failure to testify. [Citations.] This rule does not prohibit a prosecutor's comments on the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses. [Citations.]" (*People v. Hubbard* (2020) 52 Cal.App.5th 555, 563.)

Defendant cites the following exchange at sentencing which he claims violated his Fifth Amendment right:

"[Defense Counsel]: Well, our contention and what is the truth is that he was trying to help her. He did not run from the van. He went around the side but was stopped before he could. It couldn't come in because he didn't testify. I understand.

"The Court: I'll push back a little bit. [¶] I understand you are putting forward the argument he was trying to help her, but as you just noted, he didn't testify at trial. That version was not tested by cross-examination. I did allow you to present character witness[es] who said he has a trait for being helpful, but there was no testimony from [defendant] that on the night in question he was being helpful.

"[Defense Counsel]: Well, he shouldn't be punished for exercising his Fifth Amendment right.

"The Court: Not punishing him. Just stating I have a trial record in front of me, and that's—those are the witnesses who [were] tested by cross-examination."

We disagree with defendant's characterization of the trial court's statements. It was defense counsel who first referenced defendant's failure to testify when counsel cited it as the reason for the lack of evidence to support a finding that defendant was trying to help. In response, the court agreed with counsel that defendant had not testified about his purported motive. The court, however, disagreed with defense counsel's assertion that defendant was being "punished" for exercising his Fifth Amendment right to not testify, stating expressly that the court was "[n]ot punishing him" but rather reciting what occurred at trial. As noted, there is no *Griffin* error for commenting on the state of the evidence. (*People v. Hubbard, supra*, 52 Cal.App.5th at p. 563.) "Absent evidence to the contrary, we presume the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.)

Accordingly, we find the trial court did not err by exercising its discretion to require defendant to register pursuant to section 290.006.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM (D.), J.


We concur:


BAKER, Acting P. J.


MOOR, J.

11